No. 36,170

The City of Wichita, *Plaintiff,* v. Erskine Wyman, as Workmen's Compensation Commissioner, etc., *Defendant.*

(150 P. 2d 154)

Opinion filed June 26, 1944.

*Vincent F. Hiebsch* and *Fred W. Aley,* both of Wichita, argued the cause for the plaintiff.

*A. B. Mitchell,* attorney general, argued the cause, and *C. H. Hobart,* assistant attorney general, was on the briefs for the defendant.

The opinion of the court was delivered by

Dawson, C. J.: This is an original action in mandamus to determine whether the city of Wichita may act as self-insurer in respect to the payment of compensation which may be awarded to the city's employees injured in its service.

The compensation commissioner takes the position that the city is not authorized to act as self-insurer, and declines to give his sanction to its acting in that capacity.

An examination of pertinent provisions of the workmen's compensation act and some reference to our previous decisions will develop the legal question. G. S. 1935, 44-532, provides that every employer of labor engaged in any hazardous industry shall secure the payment of compensation awards to his injured employees by procuring insurance from some reliable insurance concern covering the compensable accidents which may befall them in his service. This statute further provides that the employer may show to the compensation commissioner that his financial responsibility is so sound that he may act as self-insurer. In the oral argument this

court was informed by counsel that in administrative practice, employers who set aside a fund of $3,000 or more to secure the payment of such compensation awards are ordinarily permitted to act as self-insurers.

For many years after the first enactment of the compensation statute, the state's governmental agencies, counties, cities and the like, insofar as their normal functions were concerned, did not operate under the workmen's compensation act. (*Simpson v. Kansas City*, 137 Kan. 915, 22 P. 2d 955; *Kopplin v. Sedgwick County Comm'rs*, 139 Kan. 837, 32 P. 2d 1058.) See, also, 4 Kan. Bar Journal (Feb., 1936) 197-207 and citations therein. On the other hand, it was held that in the exercise of its proprietary functions, such as the operation of its utility services, a city's liability to its injured workmen was governed by the compensation act. (*McCormick v. Kansas City*, 127 Kan. 255, 273 Pac. 471.)

By G. S. 1935, 44-505, the scope of the compensation act was extended to cover a number of industries and commercial activities not theretofore within its precise terms; these included "county and municipal work;" and it also provided that—

"The state highway commission, each county, city, school district, sewer district, drainage district and other public or quasi-public corporation . . . may elect to come within the provisions of this act by filing with the commission a written statement of election to accept thereunder. . . ." (Laws 1935, ch, 202, § 1.)

On February 14, 1944, the city of Wichita by appropriate resolution elected to come within the provisions of the compensation act so far as it covered its employees, other than the officers of its police department and the regular firemen of its fire departments for whom the city had theretofore made provision by pension funds and other satisfactory arrangements of no present concern. (G. S. 1935, 13-629 *et seq.*) The resolution also provided that representation should be made to the compensation commissioner showing the city's financial ability to serve as self-insurer as authorized by G. S. 1935, 44-532, and applying for permission so to do. These matters were properly certified and submitted to the commissioner, who acknowledged their receipt and replied—

"Upon search I am unable to find under the Statutes of Kansas any law authorizing a municipality to qualify as a self-insurer under the Kansas Workmen's Compensation Act. For this reason, I regret to inform you, the application is hereby denied. . . ."

Hence this lawsuit.

In its petition for mandamus the city pleaded the pertinent facts and alleged that it had an aggregate of 359 city employees below the grade of officers in its various governmental departments, that it had included in its budgetary estimates for 1944 one for payment of awards to its employees for injuries they might receive in its service. The city also alleged that the purchase of insurance coverage for its employees would incur an altogether unnecessary expense of $6,000 per annum, and that it was abundantly able to qualify as self-insurer.

In his answer and return to the alternative writ the compensation commissioner raised the legal question stated in his correspondence with the city quoted above. He also suggested some practical difficulties in articulating the city's fiscal arrangements for acting as self-insurer with the statutes requiring it to conduct its financial affairs in conformity with the cash-basis and budget regulations therein prescribed. (G. S. 1935, 10-1102 *et seq.;* G. S. 1943 Supp. 79-2927.)

This court has no hesitation in holding that in principle and by precedent the statutory grant of power to the city to operate under the workmen's compensation law carried with it by necessary implication the power to do so in the most efficient way; and whether the city should serve as self-insurer of compensation to its injured employees, or purchase such insurance from some reliable insurance company, is a matter which rests in the discretion of the governing body of the city. We shall note the compensation commissioner's responsibility on this point later in this opinion.

Our own reports are laden with statements of the rule governing the implied power which by practical necessity goes along with any grant of statutory power and duty conferred and imposed on public agencies. Thus in *State, ex rel., v. Younkin,* 108 Kan. 634, 196 Pac. 620, where the extent of the powers and duties imposed on a county clerk was under consideration, we said:

"When, by statute, official powers and duties are conferred or imposed upon a public officer or official board, the only implied powers possessed by such officer or board are those which are necessary for the effective exercise and discharge of the powers and duties expressly conferred and imposed." (Syl. ¶ 4.)

In the opinion, the rule quoted from Throop on Public Officers, § 542, is worth repeating:

" 'The rule respecting such powers is, that in addition to the powers expressly given by statute to an officer or a board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers.' " (p. 638.)

Other notable cases in which this court has discussed and applied the same rule were *State, ex rel., v. Davis,* 114 Kan. 283, 289-290, 217 Pac. 905; and *Womer v. Aldridge,* 155 Kan. 446, 125 P. 2d 392. In the latter case where the practicability of the statute requiring the county commissioners and the county attorney to foreclose the county's tax liens on real property which had paid no taxes for a generation was under consideration, we said:

"For the most part the means by which the county commissioners may discharge the many and varied duties imposed on them are supplied by express statutes, although occasionally the courts have had to concede that there is a narrow field in which the doctrine of implied powers must be permitted to operate as in *State, ex rel., v. Younkin,* 108 Kan. 634, 196 Pac. 620." (p. 449.)

We hold that the city of Wichita is authorized to serve as self-insurer of its employees under the workmen's compensation law.

Noting briefly the practical difficulties which the compensation commissioner seems to discern in articulating the city's contingent liability to pay compensation to its injured employees with the comprehensive and salutary provisions of the cash-basis and budget laws, such difficulties are more specious than real. Of course the city will need to make a budget estimate of its probable liability to pay such compensation during each ensuing fiscal year, and its cash-basis levies will have to be made to accord therewith. But the city's verified application for the writ alleges that such financial estimate has already been provided for, and a financial statement of its various budgeted funds, included in its application, which need not be reproduced, establishes that fact. Moreover, the cash-basis and budget laws do not forbid, and they do necessarily imply, that for certain contingent expenses the existence and amount of which is uncertain, a rational estimate thereof, by the proper officials charged therewith, is all that the cash-basis and budget regulations can require. Going back to fundamentals to illustrate this point, the constitution itself declares that to defray the expenses of the, state for each ensuing biennium, provision shall be made for raising the requisite revenue, and that the law for levying taxes must state distinctly the purpose of such levy. (Const. art. XI, §§ 4, 5.) In

actual practice, generous appropriations are made for the governor's contingent expenses, the attorney general's contingent expenses, and virtually the same for all the other state officers and state boards. To apply the hypertechnical interpretation to these appropriations which the compensation commissioner would apply to the city's requirement to specify precisely in advance just what and how much it must levy to pay its contingent liability for compensation to its injured workmen, would compel a holding that a statutory appropriation to a state officer as a contingent fund did not conform to the constitution, but that every item thereof for postage, lead pencils, etc., would have to be budgeted in detail. Surely a common sense interpretation of the cash-basis and budget laws requires no greater particularity of detail than the constitution itself.

Moreover, until an award and judgment to pay compensation to an injured workman are assessed against the city, its liability is only contingent, not absolute. When it does become absolute by a judgment, a proper estimate and levy to provide for its payment will need to be included in the next make-up of the cash-basis and budgetary provisions of the statutes—unless it can be met out of the 10 percent leeway allowed in the regular budget "for sundry or miscellaneous purposes" authorized by G. S. 1943 Supp. 79-2927.

It should hardly be necessary to add that so far as they are *in pari materia* all laws are to be read and construed together. So construed we think there is no want of accord between the earlier cash-basis and budget laws with the later statute which confers on cities the power to operate under the workmen's compensation act. Were it otherwise, the later enactment would control under familiar rules of statutory construction. (*In re Mosely's Estate,* 100 Kan. 495, 164 Pac. 1073, syl. ¶ 5; *Arkansas City v. Turner, State Auditor,* 116 Kan. 407, 226 Pac. 1009; *Binger v. Shawnee County Comm'rs,* 144 Kan. 260, 59 P. 2d 24; *City of Council Grove v. Schmidt,* 155 Kan. 515, 519, 127 P. 2d 250.)

Before concluding we should make it clear that we do not ignore the possibility that some such public agency as is authorized to come under the compensation act might have its fiscal affairs in such bad shape that the commissioner would justifiably decline to sanction its assumption of the privilege of being a self-insurer. However, we take judicial notice that the city of Wichita has financial resources to serve as self-insurer incomparably greater than those of any individual contractor to whom the commissioner has granted

the privilege of being a self-insurer. (20 Am. Jur., Evidence, §§ 16, 21; Model Code of Evidence, A. L. I. Rule 802 [b] [c].)

There is nothing further in this case to warrant discussion. Judgment will be entered for plaintiff; and that the city may not be hindered in making up its pending budgetary estimate to serve as self-insurer for the ensuing year, our decision will be announced forthwith. But as this action was brought merely to settle a legal question which perplexed the compensation commissioner no formal writ will issue for the present, and following the rule applied in analogous cases no costs will be imposed. (*Stevens v. McDowell,* 151 Kan. 316, 323, 98 P. 2d 123.) It is so ordered.

PARKER, J., not participating.