(761 P.2d 796)

No. 61,567

CHARLES HEINSOHN, *Appellant*, v. DELLYN H. MOTLEY, *Appellee.*

Opinion filed September 30, 1988.

*Seth G. Valerius* and *William Hergenreter*, of Shaw, Hergenreter & Quarnstrom, of Topeka, for appellant.

*C. Steven Rarrick* and *Thomas E. Wright*, of Davis, Wright, Unrein, Hummer & McCallister, of Topeka, for appellee.

Before RULON, P.J., SIX and ELLIOTT, JJ.

RULON, J.: Charles Heinsohn, plaintiff, appeals the trial court's grant of summary judgment in favor of Dellyn H. Motley. We find no reversible error and affirm.

The facts of this case are as follows:

Motley owned a cabin located west of Topeka. Shortly after purchasing the cabin in 1969, Motley installed a wood heating stove with the help of a friend. Later, between 1975 and 1977, Motley purchased a used propane heating stove which was also installed in the cabin by a friend. Motley was present during the installation of the propane stove, but did not pay too much attention to the installation procedure. Motley never inspected the exterior ventilation system of the propane stove; but he did light the stove once and let it heat briefly.

In March 1985, Motley sold the cabin to Heinsohn. Among other questions, Heinsohn asked Motley if the propane stove worked; Motley replied that the stove had been used only once and that Heinsohn "would have to check it out." Heinsohn was afforded an opportunity to thoroughly inspect the cabin, although he did not have anyone inspect the cabin with him.

In September 1985, Heinsohn decided to spend the night at the cabin. He lit the propane stove and went to bed. The next morning, he was found unconscious by his girlfriend and was taken to the hospital by ambulance. After he woke up in the hospital, he was told that there had been a tin can over the vent pipe. Heinsohn did not know if Motley put the can over the vent pipe, but speculated that he probably did if he installed the stove and owned the cabin for 15 years.

Heinsohn suffered carbon monoxide poisoning and was hospitalized for three days. He further suffered multiple seizures and was given Dilantin to control the seizure activity. He was unable to work for six months and continued to suffer pain in one elbow due to blood clotting and numbness caused by lack of circulation and lack of oxygen in the blood supply.

After Heinsohn's hospitalization, a mechanical inspection was conducted and numerous deficiencies were identified regarding the installation of the propane stove. The most serious deficiencies included improper venting and improper air combustion requirements due to the size of the stove.

Heinsohn filed his negligence action in March 1986, and in April 1987, Motley filed a motion for summary judgment, which was opposed by Heinsohn. Both parties fully complied with all procedural requirements which govern summary judgment practice. See K.S.A. 1987 Supp. 60-256; Rule 141 (1987 Kan. Ct. R. Annot. 79).

This court, in *Crooks v. Greene*, 12 Kan. App. 2d 62, 64-65, 736 P.2d 78 (1987), clearly stated the law controlling the granting of a motion for summary judgment:

"A moving party is entitled to summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' K.S.A. 60-256(c). The burden is on the moving party to demonstrate that no genuine issue of material fact exists when the record is viewed in a light most favorable to the nonmoving

party. See *Farmers State Bank & Trust Co. of Hays v. City of Yates Center*, 229 Kan. 330, 341-42, 624 P.2d 971 (1981). Contrary to plaintiffs' assertion, this does not mean the defendants, the moving parties here, had to prove in their summary judgment motions that they were *not* negligent. Defendants were entitled to prevail if they could establish that there was an absence of evidence to support plaintiffs' case. As stated by the United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 273-74, 106 S. Ct. 2548 (1986), when analyzing the import of Rule 56(a), (b), and (c), Fed. R. Civ. Proc., which mirror the language of K.S.A. 60-256(a), (b), and (c):

" 'In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. . . .

" '[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, *if any*" (emphasis added), suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "*with or without supporting affidavits*" (emphasis added). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.'

*Cf. Willard v. City of Kansas City*, 235 Kan. 655, 681 P.2d 1067 (1984)."

In this negligence case, Heinsohn was required to establish (1) a duty owed to him by Motley, (2) a breach of the duty, (3) damage or injury, and (4) a causal connection between the duty breached and the injury sustained. *Baker v. City of Garden City*, 240 Kan. 554, 557, 731 P.2d 278 (1987). The issue for resolution is whether Motley breached a duty to disclose any knowledge he had or should have had regarding the improper installation and ventilation of the stove. Motley had no duty, as a matter of law, to make any such disclosures. Heinsohn failed to come forward with facts tending to prove that Motley knew of the stove's dangerous condition. Therefore, Heinsohn not only failed to

come forward with facts to support his case but also failed, as a matter of law, to establish the required elements of his cause of action.

In ruling on Motley's motion for summary judgment, the district court, in a well reasoned, comprehensive memorandum decision, set forth at length the decisive facts, identified the crucial issue, and discussed the applicable law:

"Summary judgment is proper only when the record shows no material fact remains unresolved. K.S.A. 60-256(c). See also *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 662 P.2d 1203 (1983). The issue for the Court to resolve is whether the defendant breached a duty to disclose to the plaintiff any knowledge he had or should have had regarding the improper ventilation of the stove.

"The Restatement (Second) of Torts [Section 352 (1963)] sets out the doctrine . . . of 'caveat emptor,' concerning when a vendor transfers property to a vendee as follows:

'A vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.'

"However, the doctrine's extension of nonliability to a vendor is modified by Section 353 of the Restatement as follows:

'1. A vendor of land who conceals or fails to disclose [to] his vendee any condition whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land, with the consent of the vendee or his sub-vendee for physical harm caused by the condition after the vendee has taken possession, if (a) the vendee does not know [or have reason to know] of the condition or the risk involved, *and* (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved and has reason to believe that the vendee will not discover the condition or realize the risk.'

"Thus, a vendor cannot escape liability to the vendee if he fails to disclose a known defect to the vendee or a defect the vendor should have known, *if* the vendor has reason to believe the vendee will not discover the defect.

"Here, there is no evidence presented that the defendant had any knowledge, or any reason to acquire such knowledge, that the can was covering the vent pipe. There is also no evidence to indicate the defendant was aware that the stove was improperly vented. Furthermore, even if the defendant had knowledge that the stove was improperly vented, the duty does not arise until the defendant 'has reason to believe that the vendee will not discover the condition or realize the risk.' Restatement (Second) of Torts, Section 353. In the present case, the defendant specifically told the plaintiff that the stove had not been used recently and that the plaintiff should check the stove out prior to using it. The plaintiff was in possession of the cabin for six months prior to using the stove; he was given warning of its potentially unsafe condition, yet he failed to have the stove examined for fitness.

"Kansas has recognized an implied warranty of fitness for new houses. See *McFeeters v. Renollet*, 210 Kan. 158, 500 P.2d 47 (1972). However, the doctrine

of implied warranty of fitness 'has never been extended to the sale of used housing; there the doctrine of caveat emptor still prevails.' *Miles v. Love,* 1 Kan. App. 2d 630, 633, 573 P.2d 622 [, *rev. denied* 225 Kan. 845] (1977).

"Applying the rules cited above, the Court finds the defendant did not breach a duty owed the plaintiff. There are no facts to indicate he knew of the stove's imminently dangerous condition; furthermore, he informed the plaintiff that, due to the stove's nonuse, the plaintiff should have it inspected before using it. Therefore defendant's motion for summary judgment is granted."

Both parties agree the district court properly relied upon the Restatement (Second) of Torts § 352 (1963) as the controlling substantive law governing Motley's duties, if any, owed to Heinsohn. On appeal, Heinsohn asserts that Motley had a duty to warn of hidden dangerous conditions of which he knew or should have known. Heinsohn, however, was required to make his own inspection of the premises, and Motley was not responsible to him for the premises' defective condition existing at the time of transfer. Restatement (Second) of Torts § 352 comment a. In this case, the vendor did not conceal or fail to disclose an undiscoverable condition he knew or had reason to know of. Even a cursory exterior inspection of the cabin would have revealed the tin can covering the vent pipe.

Here, the exceptions to caveat emptor do not apply and Motley owed Heinsohn no duty. Heinsohn failed to establish the requisite elements of a negligence cause of action.

Affirmed.