(798 P.2d 960)
No. 64,908

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 1596, RUSSELL BRICKELL, DENNIS O'BRIEN, RICK LAUGHLIN, AND ROBERT KENT, *Appellants*, v. THE CITY OF LAWRENCE, KANSAS, *Appellee*.

Opinion filed October 12, 1990.

*John Frieden* and *Kevin Fowler*, of Frieden, Haynes & Forbes, of Topeka, for appellants.

*Roger K. Brown*, of Allen, Cooley & Allen, of Lawrence, for appellee.

Before Lewis, P.J., Rulon, J., and J. Dexter Burdette, District Judge, assigned.

Rulon, J.: International Association of Firefighters Local 1596 and its officers, Russell Brickell, Dennis O'Brien, Rick Laughlin, and Roger Kent (IAFF), plaintiffs, appeal from the district court's grant of summary judgment to the City of Lawrence (City) in a declaratory judgment action.

Essentially, we are presented two issues for consideration and resolution: (1) Does Resolution No. 5063, adopted by the Lawrence City Commission, establish a mandatory negotiating procedure resulting in a binding employment agreement between the City and IAFF; and (2) Does the wage proposal selected by

the City violate the Kansas Cash Basis Law? We reverse the district court's grant of summary judgment to the City and remand this case to the district court with instructions to grant summary judgment to IAFF consistent with the provisions of this opinion.

## FACTUAL HISTORY

At issue in this case is the validity and effect of a Memorandum of Understanding concerning conditions of the employment relationship between the City and IAFF. The Lawrence City Commission adopted a Memorandum of Understanding on June 27, 1989, pursuant to the procedure established by City Resolution No. 5063. For better comprehension of the facts surrounding the issues here in dispute, we believe it is helpful to first briefly state the facts and outcome of an earlier district court case dealing with a Memorandum of Understanding between the City and the Lawrence Police Officers Association (LPOA).

On June 27, 1984, the City and LPOA entered into a Memorandum of Understanding relating to employment conditions and covering the two-year period from January 1, 1985, to December 31, 1986. The Memorandum was negotiated and adopted according to the procedure established by City Resolution No. 4658, Section VI, which was then in effect. This resolution stated that the City chose not to come under the Kansas Public Employer-Employee Relations Act (KPEERA), K.S.A. 75-4321 *et seq.*, which establishes a framework for negotiations concerning conditions of public employment. Resolution No. 4658, therefore, substituted a negotiation procedure for that of KPEERA.

In 1985, the City notified LPOA that it wanted to reopen negotiations on the wage provisions contained in the June 27, 1984, Memorandum. LPOA refused, contending the Memorandum was a binding contract not open to further negotiation. LPOA then filed suit against the City to obtain enforcement of the Memorandum. The City responded with a motion for summary judgment, maintaining that the Memorandum was only a statement of goals and objectives, not a binding contract. In the alternative, the City argued that even if the Memorandum was a contract, it was void because it violated the Kansas Cash Basis Law, K.S.A. 10-1101 *et seq.*, and the Kansas Budget Law, K.S.A. 79-2925 *et seq.* The Cash Basis Law prohibits a municipality from entering into a contract which creates an indebtedness in excess

of the funds actually in its treasury at that time for a particular purpose. K.S.A. 10-1113. Any contract which violates the Cash Basis Law is void. K.S.A. 10-1119. Furthermore, the Kansas Budget Law prohibits a municipality from creating an indebtedness in any fund after the total indebtedness against that fund equals the adopted budget expenditures for that fund in the budget year. K.S.A. 79-2935.

The district court granted summary judgment to the City, ruling the Memorandum between the City and LPOA was not a contract. The district court found the language used in the Memorandum's cover sheet indicated the parties intended the Memorandum not to be binding. The district court further found that even if the Memorandum was a contract, it would be void under the Cash Basis and Budget Laws. The court found that, because the Memorandum entered into in 1984 provided for a wage increase in January of 1986, the City would be creating an indebtedness for 1986 in excess of funds actually on hand in 1984.

Because of this earlier district court decision, IAFF officials feared the second year of a two-year Memorandum entered into with the City in the spring of 1985 would be invalid and communicated this concern to City officials. IAFF also expressed concern over the statement in the district court opinion that Memoranda of Understanding negotiated and entered into pursuant to Resolution No. 4658 were not binding contracts. IAFF proposed that Resolution No. 4658 be replaced with a negotiating procedure which would result in binding contracts. The City Commission then adopted Resolution No. 5063, which included amendments to Resolution No. 4658 proposed by IAFF officials. Resolution No. 5063 became effective on June 2, 1987.

IAFF and the City then negotiated two one-year memoranda, one covering 1988 and the other 1989, pursuant to Resolution No. 5063. In April of 1989, IAFF and the City began negotiating conditions of employment for 1990. An impasse was reached, and pursuant to Resolution 5063, Section VI, the City and IAFF each submitted to the City Commission a proposal regarding employment conditions. The City's proposal covered a period of two years (January 1, 1990, through December 31, 1991), and IAFF's proposal covered one year (January 1, 1990, through December 31, 1990). On June 27, 1989, the City Commission, pursuant to

Resolution No. 5063, adopted the City's two-year proposal as the Memorandum of Understanding. Because IAFF believed all employment contracts containing wage provisions covering a period of more than one year were void under the Cash Basis Law, pursuant to the district court decision in the earlier LPOA case, IAFF requested the City Commission to adopt its one-year proposal rather than the City's two-year proposal. However, the City maintained the Memorandum consisting of the two-year proposal was not a binding contract and, therefore, would not be void under the Cash Basis Law.

IAFF then filed this action for declaratory and injunctive relief, seeking a determination of whether Resolution No. 5063 establishes a procedure for negotiating binding employment agreements and, if so, whether the City's two-year proposal, IAFF's one-year proposal, or both would be void under the Cash Basis Law. IAFF also requested a mandatory injunction compelling the City Commission to adopt its one-year proposal. The City responded with a motion for summary judgment, contending that if the Memorandum of Understanding were a binding contract, IAFF's one-year proposal would violate the Cash Basis Law, as would the City's two-year proposal.

IAFF then filed a cross-motion for summary judgment, contending the procedure established by Resolution No. 5063 was intended to produce binding agreements regarding employment conditions. It further contended that, because the City's two-year proposal violated the Cash Basis Law, the City Commission could not lawfully have chosen that proposal as the binding Memorandum of Understanding. IAFF claimed the City should therefore be compelled to adopt IAFF's one-year proposal as the Memorandum of Understanding. In the alternative, IAFF requested the district court to find that the two-year Memorandum is an enforceable contract which does not violate the Cash Basis Law.

Ultimately, the district court granted the City's motion for summary judgment, finding the procedure established by Resolution No. 5063 did not result in an enforceable contract, but only a "non-binding setting of goals."

## SUMMARY JUDGMENT

We agree with the district court that this case was ripe for summary judgment, but conclude the court entered judgment for the wrong party.

The rules governing the granting of summary judgment are well established.

"A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden is on the moving party to demonstrate that no genuine issue of material fact exists when the record is viewed in a light most favorable to the nonmoving party." *Crooks v. Greene*, 12 Kan. App. 2d 62, Syl. ¶ 1, 736 P.2d 78 (1987).

"The plain language of K.S.A. 1987 Supp. 60-256(c) [now K.S.A. 1989 Supp. 60-256(c)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Heinsohn v. Motley*, 13 Kan. App. 2d 66, Syl. ¶ 1, 761 P.2d 796 (1988).

## RESOLUTION NO. 5063

The City contends that, because Resolution No. 5063 is merely a resolution, it may be disregarded at any time by the City Commission. Furthermore, the City argues the City Commission effectively did this when it selected the two-year proposal as a non-binding Memorandum of Understanding. Next, the City argues that the Memorandum cannot be enforced as a contract because IAFF did not sign the Memorandum, signifying acceptance of the City's offer.

IAFF argues that the City Commission's enactment of a negotiating procedure in the form of a resolution rather than an ordinance is sufficient to legally bind the City and IAFF to the use of that procedure. IAFF further argues that by its plain language Resolution No. 5063 mandates its use in negotiations between the City and employee organizations such as IAFF.

IAFF points to the language of various Memoranda of Understanding adopted pursuant to Resolution No. 5063 as support for its argument that they are legally enforceable contracts, not mere statements of goals.

We believe the district court erroneously concentrated on Resolution No. 5063's use of the label "Memorandum of Understanding" instead of "Memorandum of Agreement" in finding the Resolution provided for a "non-binding setting of goals." The district court stated "it is clear the City can do what it chooses to do legislatively and the firefighters are unable to bargain for an enforceable contract under [R]esolution 5063."

In resolving the issue of whether the adoption of Resolution No. 5063 results in a legally binding employment agreement, we must first determine if the establishment of a negotiating procedure for employment agreements is properly done by resolution rather than by ordinance. In general, a resolution deals with matters of a special or temporary character, while an ordinance prescribes some permanent rule of conduct or government to continue in force until the ordinance is repealed. 5 McQuillin, Municipal Corporations § 15.02 (3d ed. rev. 1989). An ordinance is distinctively a legislative act; a resolution is simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality. *Benson v. City of DeSoto*, 212 Kan. 415, Syl. ¶ 1, 510 P.2d 1281 (1973).

A municipal corporation has dual powers, governmental and proprietary. *Krantz v. City of Hutchinson*, 165 Kan. 449, 454, 196 P.2d 227 (1948). Governmental or legislative powers are exercised to administer the affairs of the state and promote the public welfare generally. 2 McQuillin, Municipal Corporations § 10.05 (3d ed. rev. 1988). Proprietary or administrative powers are exercised to accomplish private corporate purposes in which the public is only indirectly concerned and as to which the municipality is regarded as a legal individual. 2 McQuillin, Municipal Corporations § 0.05.

A public employer, such as a municipality, may negotiate and be bound by an employment agreement. *National Education Association v. Board of Education*, 212 Kan. 741, 749-50, 512 P.2d

426 (1973). Negotiating an employment agreement is not an 'exercise of a municipality's governmental or legislative power, but of its proprietary or administrative power. Such an agreement is entered into by two legal entities, the municipality and the employee or employee organization. This agreement does not directly concern the general public welfare, but only the relationship between the municipality as employer and its employees. Negotiating and entering into an employment agreement is merely an administrative function necessary to fulfill a municipal duty, such as providing fire protection for citizens.

Because negotiating an employment agreement is part of the administrative or proprietary business of a municipality, the City properly established by Resolution. No. 5063 a procedure for obtaining agreements concerning working conditions with its employees. Furthermore, the City is obligated to follow this procedure until the City Commission takes official action to amend or repeal Resolution No. 5063. Our research uncovered no statement of law holding a resolution to be less legally binding in operation or effect than an ordinance; a resolution is merely a less formal expression of the opinion or wishes of a governing body concerning a matter within its official cognizance. See 1 Yokley, Municipal Corporations § 82 (1956).

The City argues that the Commission's selection of the two-year proposal as the Memorandum of Understanding "effectively overruled or repealed any conflicting provisions in Resolution No. 5063." However, a cardinal rule of construction is that repeal by implication is not favored; the presumption is that there has been no repeal absent an express or clear indication of an intent to repeal. 1 Yokley, Municipal Corporations § 92.

Ordinarily, a formal repeal of a resolution is not required if the resolution is adopted for only a particular and temporary purpose, and that purpose has been accomplished. 5 McQuillin, Municipal Corporations § 15.42. Resolution No. 5063, however, while adopted for the particular purpose of establishing a negotiating procedure, is not temporary in character. The language of the Resolution gives no indication that the City Commission intended it to be only temporary in character. Specifically, the heading of the Resolution states it is "SETTING FORTH THE POLICY OF THE CITY OF LAWRENCE, KANSAS, WITH

REGARD TO EMPLOYEE ORGANIZATIONS AND AMEND-
ING RESOLUTION 4658." Because a municipal resolution is a
legally sufficient method of establishing an employment negoti-
ating procedure, and a resolution of a permanent character is
effective until the governing body expresses a clear intent to
repeal or amend it, we conclude the City is bound by Resolution
No. 5063 in its negotiations with IAFF.

The next step in determining whether the use of Resolution
No. 5063 results in a binding agreement is to consider the lan-
guage of the Resolution and the language of the two-year proposal
the City Commission selected pursuant to the Resolution as the
Memorandum of Understanding.

IAFF asserts Resolution No. 5063 is replete with mandatory
language in describing the actions to be taken by the City and
the employee organization in the negotiation process. Concen-
trating on Section VI, detailing the process used to negotiate a
Memorandum of Understanding, the first paragraph of the sub-
section Discussion Procedure states that the employee organi-
zation "shall" submit a letter requesting discussion about working
conditions. Failure to do so results in forfeiture of discussion for
that year. In the context of Section VI, as well as the entire
Resolution, "shall" is logically interpreted as a mandatory direc-
tive. Furthermore, a critical feature of mandatory legislation is
often a provision for the consequences of noncompliance. *Paul v.
City of Manhattan*, 212 Kan. 381, 385, 511 P.2d 244 (1973). The
language stating forfeiture of discussion will result from failure to
request discussion is such a provision. If the employee organi-
zation fails to so request, it logically cannot take advantage of
any of the Resolution's provisions regarding negotiation and
impasse.

In further support of our conclusion that Resolution No. 5063
establishes a mandatory procedure for obtaining a binding, en-
forceable agreement is the description of the steps to be taken
if the parties fail to resolve an issue of discussion. These steps
are delineated under the heading Impasse in Section VI. The
parties are to each submit a proposal to the City Commission
after various steps to resolve the impasse have been taken. In
the seventh paragraph of this subsection, the City Commission
is to select one party's proposal. The final sentence of the sub-

section clearly states, "The City Commission's decision shall be final and binding." This sentence is an express statement of the City Commission's intention that any proposal selected by it under the impasse procedure will be binding on the parties as an enforceable agreement. This intention is reiterated in Memorandum Section VIII - <u>Prohibited Practices</u>. Item 7 prohibits and makes it a violation of the Resolution for any party to "[d]elay or refuse to accept the City Commission's decision as final and binding."

The language used in the two-year proposal selected by the City Commission to be "final and binding" also supports the interpretation of the Memorandum as an enforceable agreement. Consider the following portions from the agreement (emphasis added):

### "I. PREAMBLE

"Pursuant to Resolution 5063, this Memorandum of Understanding been [sic] entered into by the City of Lawrence, Kansas, hereinafter referred to as the "City", and International Association of Firefighters, Local 1596, hereinafter referred to as the "Union" on [sic]. The duration of the terms of this *agreement* shall be for a period of two years starting on January 1, 1990 and ending December 31, 1991. The purpose of this Memorandum of Understanding is to maintain harmonious relations between the City Firefighters represented by the Union; to provide for an equitable procedure for the resolution of differences which may arise; and, to establish rates of compensation and other terms and conditions of employment.

### "II. DURATION

"This *agreement* shall be effective as of the first day of January 1990 and shall remain in full force until the last day of December 1991.

### "III. SUCCESSORS

"This *agreement* shall be *binding* upon the successors and no provisions, terms, or obligations herein, contained shall be affected, modified, altered, or changed in any respect whatsoever by consolidation, merger, or annexation.

. . . .

### "XIII. SAVINGS CLAUSE

"A. If any article of this *agreement* should be found by a legislative or judicial authority to be unlawful, *unenforceable*, or not in accordance with applicable statues [sic]; all other articles and sections of this *agreement* shall remain in full force and affect during the duration of this *agreement*."

The City argues that even if this Memorandum is found to be enforceable, it cannot be enforced because IAFF did not sign it. Resolution No. 5063, however, does not require the parties' sig-

natures for a proposal selected by the Commission under the impasse procedure to be binding. The final sentence of the Impasse subsection states the Commission's decision is final and binding. There is no accompanying statement that the final and binding character of the Commission's decision is dependent on the parties signing the selected proposal. Although the next subsection, Memorandum of Understanding, states that "[a]greements reached" shall be signed by the parties, nothing in this subsection supports the conclusion that if this mandate is not followed, the final and binding character of the Commission's decision is removed.

The language of Resolution No. 5063 supports our conclusion that the City Commission's intent in enacting the Resolution was to establish a mandatory negotiating procedure for obtaining binding, enforceable employment agreements. The language of the two-year proposal selected by the Commission as the Memorandum of Understanding between the City and IAFF additionally supports our conclusion that there is a binding, enforceable agreement.

## THE CASH BASIS LAW

The Kansas Cash Basis Law states as follows:

"**Creating indebtedness in excess of funds unlawful; exceptions.** Unless otherwise provided in this act, it shall be unlawful after May 1, 1933, for any member of any governing body of any municipality to knowingly vote for or in any manner aid or promote the passage or adoption of any order, motion, ordinance, resolution, legislation or other act of said governing body, creating an indebtedness in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose." K.S.A. 10-1113.

"**Void contracts and orders.** Any contract entered into between the governing body of any municipality and any person, which violates the provisions of this act, shall be void." K.S.A. 10-1119.

IAFF contends the Memorandum at issue does not violate the Kansas Cash Basis Law for multiple reasons. First, although the City is legally obligated to compensate the firefighters over a two-year period, no indebtedness was created until the firefighters performed their work duties under the agreement. Thus, the City is obligated to pay the firefighters only when this work is performed and not on June 27, 1989, when the City did not have the funds in the treasury. Next, IAFF asserts the exact amount

the City is to pay after these services are performed is uncertain because the number of firefighters to be employed and the number of hours each is to work over the two-year period is uncertain. In fact, the Memorandum permits the number of firefighters to be reduced "because of lack of funds or curtailment of work." Finally, IAFF argues that the City's 1990 budget, including estimates of the firefighters' wages, became effective in August, 1990, and at least half of the property taxes funding budgetary expenditures were due December 20, 1990. Thus, funds were appropriated and present in the City's treasury when any indebtedness was incurred under the Memorandum in 1990.

Conversely, the City contends the Memorandum violates the Cash Basis Law because the City Commission had not yet adopted a budget for 1990 when it selected the two-year proposal on June 27, 1989. (The budget for 1990 did not become effective until August 1989.) The City asserts that the selection of either the one-year or two-year proposal as a binding Memorandum before August 1989 created fiscal obligations in violation of the Cash Basis Law. Furthermore, the City argues funds to cover firefighter compensation were not appropriated until the budget was filed with the County Clerk in August 1989, nor were these funds deposited in the treasury when the Memorandum was selected.

To determine whether the Memorandum violates the Cash Basis Law and is therefore void, we must determine if the City incurred an indebtedness or legal obligation to compensate the firefighters under the Memorandum on June 27, 1989, when it was adopted. If the City did incur an indebtedness at that time, the Memorandum is void because insufficient funds were in its treasury to cover the compensation obligations set forth in the two-year agreement. K.S.A. 10-1113; K.S.A. 10-1119. However, if the City did not incur legal obligations under the Memorandum to compensate the firefighters until after the effective date of the Memorandum, January 1, 1990, the agreement is not void. When the City incurs these obligations in 1990 and 1991, funds will have been appropriated for this purpose in the 1990 budget (which became effective in August of 1989) and in the 1991 budget (which presumably became effective in August of 1990). Furthermore, as at least half of the City's levied taxes becomes due on December 20 of the current year and the other half on June

20 of the following year, K.S.A. 79-2004(a), funds will be in the treasury to cover the obligations as they become due.

Our Supreme Court in an early case stated the general rule that compensation for services becomes due only when those services have been rendered. *Carney v. Havens*, 23 Kan. 82, 86 (1879). The court stated, "Wages for services, when a specific time or amount of services is contracted for, are only due when the services are fully rendered, and it matters not how great may be the variety or amount of the services, provided they are included in a single contract." 23 Kan. at 86.

Williston and Corbin agree. Under a contract of service, the employee must render the service before payment is due. 6 Williston on Contracts § 830 (3d ed. 1962). That wages are not due until after the labor is done, at the end of a wage period, is the "universal custom of men." 3A Corbin on Contracts § 676 (1960). Restatement (Second) of Contracts § 234 (1979) states as follows:

"**Order of Performances**
"(1) Where all or part of the performances to be exchanged under an exchange of promises can be rendered simultaneously, they are to that extent due simultaneously, unless the language or the circumstances indicate the contrary.
"(2) Except to the extent stated in Subsection (1), where the performance of only one party under such an exchange requires a period of time, his performance is due at an earlier time than that of the other party, unless the language or the circumstances indicate the contrary."

Comment e to that section states, "Centuries ago, the principle became settled that where work is to be done by one party and payment is to be made by the other, the performance of the work must precede payment, in the absence of a showing of a contrary intention."

Applying this well-established principle, we conclude the City did not incur an indebtedness or obligation to compensate the firefighters under the Memorandum on June 27, 1989. The Memorandum is to be in effect from January 1, 1990, to December 31, 1991; thus, its provisions govern firefighter compensation only for work performed during that time period. Because labor must be performed before payment for it is due, obligations of the City under the Memorandum to compensate firefighters are in-

curred only in the years 1990 and 1991, after the firefighters have completed their duties. Assuming the City uses a pay period system for payroll disbursement, an obligation to compensate a firefighter is incurred only at the end of a pay period for work done during that pay period. If the parties interpret a contract for services as providing for a periodic wage, courts usually adopt this construction in determining when payment is due. Annot., 2 A.L.R. 522, 529.

Because the City is legally obligated to compensate firefighters under the terms of the Memorandum only after the labor is performed in 1990 and 1991, funds will be appropriated and present in the City treasury to cover this indebtedness as it is created. The City budgets for 1990 and 1991, containing estimates of firefighter compensation for those years, became effective in August 1989, and presumably in August 1990, respectively. Furthermore, at least half of the property tax revenues from the City's ad valorem tax levy will be due December 20 of the current year, with the remainder due June 20 of the following year. This money will then be in the treasury to cover the indebtedness created by the firefighters' performance of duties during each pay period.

The exact amount the City will be obligated to pay the firefighters under the Memorandum is uncertain because (1) the amount due in compensation is contingent upon the number of firefighters employed by the City over the period covered by the Memorandum, and (2) the Memorandum does allow a reduction in personnel for insufficient funds or lack of work. Because the amount that will be due is contingent, the 1990 budget appropriating funds to cover that amount is at best only an estimate of the City's actual obligation in 1990. Likewise, the City's 1991 budget appropriation is only an estimate of the amount it will actually be obligated to pay firefighters in 1991. This lack of certainty in budget appropriations does not violate the Cash Basis Law.

In *City of Wichita v. Wyman,* 158 Kan. 709, 150 P.2d 154 (1944), the Kansas Supreme Court held the city of Wichita was able to act as a self-insurer under the state workers compensation statutes. 158 Kan. at 712. The court then discussed whether Wichita, acting as a self-insurer, would violate the Cash Basis

Law. 158 Kan. 712-13. The court acknowledged the city could only estimate its workers compensation liability for the ensuing fiscal year in preparing the budget for that year. 158 Kan. at 712. The Cash Basis Law, however, "necessarily impl[ies] that for certain contingent expenses, the existence and amount of which is uncertain, a rational estimate thereof . . . is all that [it] can require." 158 Kan. at 712. The city's liability for a worker's injury becomes absolute only upon judgment; when a judgment is rendered, the amount may then have to be estimated and included in the next proposed municipal budget. 158 Kan. at 713. The contingency or uncertainty of the amount appropriated in the current budget, however, does not violate the Cash Basis Law. 158 Kan. at 712-13. The workers compensation statute allowing Wichita to act as a self-insurer and the Cash Basis Law were thus construed so "there is no want of accord between" the statutes. 158 Kan. at 713.

Here, like Wichita's workers compensation liability, the City's liability to the firefighters is contingent under the Memorandum. Following *Wyman,* the contingent character of this budgetary appropriation does not violate the Cash Basis Law, making the Memorandum void. Because the City does not incur an indebtedness for firefighter compensation until the firefighters perform the labor contracted for under the Memorandum, the City incurred no indebtedness on June 27, 1989, when the Memorandum was selected. Thus, the Memorandum of Understanding covering the period from January 1, 1990, to December 31, 1991, is not void under the Cash Basis Law.

We reverse the district court's grant of summary judgment to the City and remand with instructions to enter judgment for IAFF declaring the two-year Memorandum of Understanding enforceable and not in violation of the Kansas Cash Basis Law, K.S.A. 10-1101 *et seq.*