Steven W. Hirsch Decatur County Attorney PO Box 296 Oberlin, Kansas 67749 Dear Mr. Hirsch:
As Decatur County Attorney you request our opinion on "whether or not the county needs to maintain sufficient cash balances to cover the potential paid time-off leave that could be paid pursuant to the cash-basis law." "Paid time-off leave" (PTO) would replace the county's current system which provides for separate vacation leave, sick leave, well leave and funeral leave.[1] One day of PTO would be earned during each month of service[2] with any accumulated PTO being fully due and payable either annually or upon the employee's separation from service.[3] You cite to Attorney General Opinion No. 98-13 and note that legal counsel advising the county on employment matters has advised the county that under federal law once the day is earned it becomes an obligation for the county to pay.[4] Thus, it is your opinion that such a leave policy creates an obligation under the cash-basis law, and you believe it important to clarify whether providing employees with such PTO requires the municipality to comply with the Kansas cash-basis law by having funds on hand to cover such expenses.
Counties, usually acting through the county commissioners, are empowered to enter into contracts and set employee policies.[5] The parties to an employment relationship possess wide latitude in fixing the terms of employment, as long as those terms are not contrary to applicable laws.[6] Neither Kansas nor federal law absolutely requires that all accrued but unused vacation or sick time be monetarily compensated. Rather, the policies adopted by each employer will generally establish whether and when earned but unused PTO will be treated as vested and owed.[7] If such a policy exists, determining whether a specific employer owes a specific employee for PTO can only be determined by reviewing the specific policy in question and the facts of each situation. Decatur County has not submitted a specific policy and thus the issue can be addressed only in general terms.
K.S.A. 44-315(a) requires that all employers pay employees their earned wages. K.S.A. 44-313(c) defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis less authorized withholding and deductions."[8] K.A.R. 49-20-1(d) defines "or other basis" as used in the foregoing statute to include:
 "[A]ll agreed compensation for services for which the conditions required for entitlement, eligibility, accrual or earning have been met by the employee. Such compensation may include, but is not limited to, profit sharing, fringe benefits, or compensation due as a result of services performed under an employment contract that has a wage rate required or implied by state or federal law."
In some situations, earned leave has been recognized by the courts as a type of wage.[9] In other situations, such earned time is not regarded as part of an employee's wages or salary.[10]
An employee may typically accumulate PTO on a regular basis and that time may be used or compensated based upon the conditions set forth and adopted by the employer. Commonly, policies provide that any accrued PTO may be used by taking time off during the employment relationship or by converting the PTO to monetary compensation paid at specific intervals or upon separation from service. Thus, until the terms of the specific policy are established, and the employment relationship is terminated, the exact amount of PTO monetary payment that has been earned and is owed cannot be determined.
Assuming that the county has in fact chosen to give its employees PTO benefits that may require monetary payments at some point, the question becomes how a county may comply with the cash-basis law when implementing such a policy.
K.S.A. 10-1101 et seq. set forth the cash-basis law. Counties fall under the definition of municipalities subject to the cash-basis law and boards of county commissioners fit the definition of "governing body."[11] Thus, counties and boards of county commissioners must comply with the cash-basis law.
K.S.A. 10-1113 provides in pertinent part:
 "Unless otherwise provided in this act, it shall be unlawful after May 1, 1933, for any member of any governing body of any municipality to knowingly vote for or in any manner aid or promote the passage or adoption of any order, motion, ordinance, resolution, legislation or other act of said governing body, creating an indebtedness in excess of the amount of funds actually on hand in the treasury of such municipality at the time for such purpose. . . ."[12]
The 1933 Kansas Legislature enacted the cash-basis laws in an attempt to remedy a situation wherein taxing subdivisions had become accustomed to carrying substantial debt loads that extended well beyond current budget years.[13] "The clear and unmistakable purpose of such provisions is effectually to protect persons residing in municipalities or counties from the abuse of their credit and the consequent oppression of burdensome, if not ruinous, taxation. The mischief to be prevented is the creation of an excessive debt for local improvements or public works, or the loaning of municipal or county credit so payable that the burden should not fall upon those who contracted the obligations, or their revenues, but on posterity."[14] Thus, the cash-basis law generally creates a statutory restraint upon municipal creation of future debts beyond a current budget year.
The polestar for application of the cash-basis law is determining whether "indebtedness" is created. What constitutes "indebtedness" was addressed in a 1998 Attorney General opinion:
 "The term "indebtedness" is not defined by statute and has not been generally defined by the courts. Rather, each case examining whether a municipality's action creates an indebtedness for which funds must be on hand in the treasury has been decided based on the particular facts presented. We found no Kansas cases on point, however the Kansas Supreme Court has, under certain circumstances, approved long-term contracts by municipalities even though there were insufficient funds on hand when the municipality executed the contract. In City of Wichita v. Wyman, 158 Kan. 709 (1944), the Court concluded that a city could serve as self-insurer of its employees under workers' compensation laws even though the city would be obligated to pay compensation to injured workers in future years. The Court reasoned that until an award and judgment to pay compensation to an injured worker is assessed against the city, its liability is only contingent, and not absolute. Likewise, the Court in International Association of Firefighters v. City of Lawrence, 14 Kan.App.2d 788 (1990), found that a wage proposal which legally obligated the city to make payments over a two-year period did not violate the cash-basis law even though the city did not have enough money for the two-year period on hand when it entered into the agreement. Because the law is clear that compensation for services becomes due only when those services have been rendered, the city did not incur indebtedness or obligation to compensate upon entering the agreement. The Court determined that the obligation to compensate was incurred only at the end of a pay period for work done during that pay period. In both Wyman and International Association of Firefighters, the cities' future payments were based on a contingency, and the cities would have the funds available to make those payments after the contingency was met."[15]
Thus, a policy obligating a county to pay for paid time off does not violate the cash-basis law where the obligation to pay is contingent upon future events.[16]
We believe that the case of International Association of FirefightersLocal 1596 v. City of Lawrence[17] provides relevant guidance with regard to a municipality entering into long term agreements that establish the terms under which an employer agrees to pay compensation to employees. In this case, the firefighters and their association sought relief against the city and asked the court to determine whether the city's two year contract proposal violated the cash-basis law. The Kansas Court of Appeals addressed the cash-basis issue and concluded that the city had not incurred an indebtedness or obligation to compensate firefighters under the memorandum of understanding immediately upon its adoption.[18] The city's obligation to compensate the firefighters would occur only after the firefighters completed their duties, at which time the city should have in its treasury sufficient funds to cover the indebtedness.[19]
The trust agreement addressed in Attorney General Opinion No. 98-13 is distinguishable from the contract in the Firefighters case because the trust agreement would have created a debt fully incurred and owed by the county at the time the agreement was executed. Attorney General Stovall opined that in order to comply with the cash-basis laws the funds to cover this fully vested obligation should be on hand at the time the debt was created or agreed upon.
A county PTO policy is more akin to the Firefighters contract than the trust agreement in Attorney General Opinion No. 98-13 because the debts that may be incurred and the amounts thus owed by the county are not automatically established nor owed at the time such a policy or agreement is adopted. Accordingly, no indebtedness is created by virtue of a policy providing for PTO.[20] Rather, as with the situation addressed in the Firefighters case, any PTO earned (and the resulting debt that may be owed to employees who leave the county's employ) is contingent upon facts that have yet to occur.
The county will be required to have on hand the amount of cash needed to pay accumulated PTO once all conditions have been met. It is the PTO policy that will address the conditions, the satisfaction of those conditions, and the method of paying PTO. County commissioners, in drafting a policy addressing payment of accumulated leave, should be mindful of cash-basis ramifications. If the policy provides that an employee is entitled to a lump sum payment at some point during employment or upon separation, the cash-basis law requires that funds be available prior to approval of payment. Thus, any debts will be created some time in the future and the county may provide for such payments on a yearly basis, in the normal course of adopting a budget.[21]
The final issue is how a county may lawfully provide for payment of PTO compensation in its yearly budget. Pursuant to K.S.A. 75-1123, the Kansas Department of Administration, Accounts and Reports Division has created a guide in order to assist auditors in reviewing the accounts of governmental entities such as counties.[22] This guide suggests how counties may handle accumulated leave when adopting a yearly budget.[23] Guidelines for county budgets all appear to support the position that accrued compensated absences are to be treated as a potential estimated liability, rather than a vested future right to such payments.
Summarizing, it is our opinion that whether or not a county policy establishing paid time off violates the cash-basis law will depend upon whether the obligation to pay employees is contingent upon future events. Should the policy provide that an employee is entitled to a lump sum payment at some point during employment or upon separation, the cash-basis law requires that funds be available prior to approval of payment.
Sincerely,
 Paul J. Morrison Attorney General
 Theresa Marcel Bush Assistant Attorney General
PJM:JLM:TMB:jm
[1] Hirsch correspondence, June 5, 2007.
[2] Hirsch correspondence, June 13, 2007.
[3] Hirsch correspondence, June 5, 2007.
[4] Attorney General Opinion No. 98-13 concluded that "[u]pon entering into a trust agreement which obligates Decatur County to make payments over a forty-year period, in order to comply with the cash-basis law the County should have on hand in its treasury the entire aggregate amount due over the forty-year period, unless the agreement is authorized by the electors of Decatur County. The current Board of County Commissioners of Decatur County may bind future Boards of County Commissioners by entering into a trust agreement as long as such agreement complies with the cash-basis law and any other applicable laws."
[5] See K.S.A. 19-101 and 19-212.
[6] Richardson v. St. Mary Hospital, 6 Kan.App.2d 238, 242,627 P.2d 1143, rev. denied, 229 Kan. 671 (1981).
[7] Dillard Department Stores, Inc. v. Kansas Department of HumanResources, 28 Kan.App.2d 229 (2000).
[8] Emphasis added.
[9] Mid America Aerospace, Inc. v. Department of Human Resources,10 Kan. App. 2d 144, 146 (1985).
[10] International Association of Fire Fighters Local 1596 v. City ofKansas, 24 Kan.App.2d 98 (1997) ("Salary" as used in K.S.A. 13-14a08
does not include lump sum payments for unused sick leave, vacation time, and compensatory time); Richardson v. St. Mary Hospital, supra (earned time not considered wages as defined by K.S.A. 44-313 even if an employee would be paid a portion of any accumulated "earned time" upon separation).
[11] K.S.A. 10-1101.
[12] Emphasis added.
[13] Drum v. French, 138 Kan. 277 (1933) (purpose of cash-basis law is to speed up payment of all current outstanding debts); Fred Gulick,The Revised Budget Law of 1941, 14 J. Kan. Bar Assoc. 100 (1945).
[14] 56 Am.Jur.2d, Municipal Corporations, § 599 (1971).
[15] Attorney General Opinion No. 98-13.
[16] Attorney General Opinions No. 75-451 (memorandum of understanding prescribing wage and salary for city police employees did not violate the cash-basis laws); 75-458 (junior college can fix compensation to be paid a president in the future because the compensation is not owed until services are rendered); 79-63 (lease with an option to purchase is permitted if the county is not obligated beyond each current budget year); and 87-88 (city may lease property for park use if the obligations are limited to periodic payments). See also Edwards CountyCommissioners v. Simmons, 159 Kan. 41 (1944); Verdigris River DrainageDistrict v. State Highway Commission, 155 Kan. 323 (1942); andInternational Association of Fire Fighters Local 1596 v. City ofLawrence, 14 Kan.App.2d 788 (1991).
[17] 14 Kan.App.2d 788 (1991).
[18] Id. at 800.
[19] Id. at 801.
[20] The Kansas Municipal Audit Guide and the Governmental Accounting Standards Board (GASB) treat PTO as potential estimated liability rather than a current financial obligation. Kansas Municipal Audit Guide
(2007); GASB Standard 16.
[21] When adopting a county budget there is always some degree of estimation that must be done in order to cover anticipated obligations that may arise during a year but where the exact amounts cannot be finally determined until later. It is this type of yearly accounting system that most commonly provides for funds to cover the costs of paying employees for accrued PTO. If an unexpectedly high number of employees are terminated in a given budget year, and an emergency funding situation arises, the county may find it necessary to amend the budget or transfer funds from available accounts.
[22] http://www.da.ks.gov/ar/muniserv/Manuals/ccmanual07.pdf (Budgeting for Kansas Cities and Counties, April 2006.)
[23] See also http://www.gasb.org/ Government Accounting Standards Board guidelines and http://www.kscpa.org/ Kansas Municipal Audit Guide (2007) published by the Kansas Society of Certified Public Accountants.